**UNITED STATES of America,**
**Libellant,**

v.

**ONE 1957 MODEL CHEVROLET ONE-HALF TON PICKUP TRUCK, SERIAL NUMBER V3A57B110126.**

Civ. No. 775.

United States District Court
E. D. North Carolina,
Wilmington Division.

Dec. 19, 1957.

———————◇———————

Julian T. Gaskill, United States Attorney, Raleigh, N. C., for libellant.

Cicero P. Yow, Wilmington, N. C., for intervening petitioner.

GILLIAM, District Judge.

In this action the intervening petitioner seeks the remission to the extent of its interest of the forfeiture of a truck found in violation of the Internal Revenue laws relating to liquors. The facts of the case appear as follows:

Raeford Willaford began negotiations for the purchase of a truck from the petitioner, Richlands Motor Sales, Inc., sometime prior to April 8, 1957. During the course of negotiations, the petitioner inquired of Mr. Thomas Marshall, Sheriff of Onslow County, and Mr. A. R. Brown, Jr., Chief of Police, Richlands, North Carolina, as to Willaford's record or reputation for violating federal or state liquor laws. In response to these inquiries, the petitioner was informed by both of the above officers that Willaford had neither a record or reputation for violating the federal or state liquor laws. At all times mentioned herein, Willaford resided in a section of Onslow County adjacent to Richlands, North Carolina. On April 8, 1957, subsequent to the petitioner's receipt of the information furnished by the aforementioned officers, Willaford purchased the truck from the petitioner and at that time gave the petitioner a note and conditional sales contract as part of the purchase price.

Prior to and during the events described above, the petitioner, as part of its financing scheme, assigned its automobile and truck purchaser's paper to the General Motors Acceptance Corporation (hereinafter called G.M.A.C.). Although G.M.A.C. usually remitted an advance to the petitioner upon receipt of the paper, there was a long standing agree-

ment between the parties to the effect that no sale of a vehicle purchaser's note and conditional sales contract was to become final until the expiration of a reasonable length of time. This period of time was established to enable G.M.A.C. to determine the quality of the paper in connection with its decision as to whether or not to purchase the same. In the event that G.M.A.C. refused to purchase a particular note, any advance to the petitioner upon receipt of the note by G.M.A.C. usually was returned to G.M.A.C. At no time was G.M.A.C. under any legal compulsion to forward an advance to the petitioner upon the receipt of a purchaser's note. The practice of forwarding an advance at once is the outgrowth of automobile dealers' system of financing. Frequently the dealer, upon the sale of a vehicle, needs immediate funds to release the vehicle from its position as security under a floor-planning scheme or to replace depleted inventory.

On or about April 10, 1957, the petitioner submitted Willaford's note and conditional sales contract to G.M.A.C., and the latter, upon receipt of the same, remitted an advance to the petitioner. Prior to the expiration of a reasonable length of time, G.M.A.C. inquired among various law enforcement agencies as to Willaford's record or reputation as a liquor law violator. Immediately upon being informed that Willaford had such a reputation with federal enforcement agencies, G.M.A.C. notified the petitioner that it could not accept the assignment of the note and conditional sales contract. The petitioner acknowledged the paper as its own and that the assignment was not to become effective, but the petitioner, because it needed funds or otherwise, prevailed upon G.M.A.C. to collect the paper and not to require a return of the advance. As accommodation to its customer, G.M.A.C. acquiesced in the petitioner's request.

At the November, 1957, term of the United States District Court in Wilmington, N. C., Raeford Willaford pleaded guilty to transporting non-taxpaid whiskey. Upon the evidence presented, the Court finds that in fact Willaford did have a reputation for violating the federal or state liquor laws at the time of the events herein described, and further finds that at the time of the events referred to in the Libel of Information, the one 1957 Model Chevrolet One-half Ton Pickup Truck, above described, was being used by Raeford Willaford, registered owner, in violation of the Internal Revenue laws.

The conditions precedent to the remission or mitigation of forfeiture under the liquor laws are set forth in 18 U.S.C.A. § 3617(b). Briefly, these conditions, as applied to the present case, are that, (1) the petitioner have an interest in the vehicle acquired in good faith; (2) the petitioner have no knowledge or reason to believe that the vehicle would be used in the violation of federal or state liquor laws; and (3) the petitioner, prior to acquiring its interest, be informed in answer to its inquiry at the headquarters of the principal local or federal enforcement officer of (a) the locality in which the vehicle purchaser bought the truck, (b) the locality in which the vehicle purchaser resided, and (c) each locality in which credit inquiry is made, that the vehicle purchaser had no record or reputation for violating state or federal liquor laws.

The Court finds as a fact, and it is apparently conceded by the Government, that the petitioner at all times exercised good faith and had no knowledge or reason to believe that the vehicle would be used in the violation of federal or state liquor laws, and that the petitioner, in response to inquiry of the proper officers in the proper localities, was informed that Willaford had neither a record or reputation as a liquor law violator. The issue to be determined in the instant controversy is whether or not the petitioner has an interest in the truck in question.

The instant transaction between the petitioner and G.M.A.C. appears to have been a sale on approval. The note and conditional sales contract involved were submitted to G.M.A.C. for purchase, and G.M.A.C. had a reasonable length of time

in which to determine the quality of the paper before deciding to accept or reject the offer of sale of the note. Because of the character of the continuous transactions between the petitioner and G.M.A.C., an acceptance was to be signified by silence. Conversely, a rejection of the submitted offer was to be manifested within a reasonable length of time.

With regard to sale on approval, Williston on Contracts, Abridged Edition, Sec. 722, states as follows:

"The approval of the buyer may be a condition precedent to the transfer of title * * * it makes little difference what language the parties use since it is their manifestation of intention, evidenced by the whole contract, which determines their rights."

It seems clear that the law of North Carolina recognizes a sale on approval, and when by the contract between the vendor and vendee the goods are to be examined or inspected, or, in other words, approved by the vendee, title does not vest in the vendee until such approval is manifested. Elliott v. Southern Railroad Co., 155 N.C. 235, 71 S.E. 339; Glascock v. Hazell, 109 N.C. 145, 13 S.E. 789; Devane v. Fennell, 24 N.C. 36. It therefore seems clear that in view of G.M.A.C.'s express rejection of the instant note and conditional sales contract within a reasonable length of time, no title passed and no interest in the truck was acquired by G.M.A.C.

But the Government contends that although legal title would not pass until approval was manifested by the vendee, the petitioner in the instant case transferred its interest in the note and conditional sales contract (and hence the truck), through a legal option to buy or otherwise, when G.M.A.C., upon receipt of the note and conditional sales contract, remitted an advance to the petitioner. It appears to the Court that this argument is without merit under the following reasoning.

The advance by G.M.A.C. was not made in consideration of the petitioner's giving up its right to withdraw its offer to sell the note; hence it cannot be said that upon payment of the advance that G.M.A.C. acquired an interest in the truck termed in law an option to buy. Prior to approval by G.M.A.C., the petitioner could withdraw its offer to sell the note, and this is true whether or not any advance was made at the time the note was submitted to G.M.A.C. Until the approval of the note and the consequent acceptance of the offer to sell the same, neither the petitioner nor G.M.A.C. was under any enforceable obligation with regard to the note and conditional sales contract in question. That the petitioner usually would have had to return the advance if G.M.A.C. rejected the note stems from the fact that until G.M.A.C. approved and accepted the note, no consideration was given by the petitioner for the advance. In other words, the petitioner's obligation to return the advance and G.M.A.C.'s right to the same upon the latter's failure to accept the note stems from the complete absence of a transfer of *any* interest in the note and conditional sales contract as consideration for the advance; it is predicated upon the fact that no contractual relationship has become binding upon the parties.

The petitioner's failure to return the advance and G.M.A.C.'s failure to require such a return does not alter the relationship of the parties. G.M.A.C.'s interest arising from the transaction still extends solely to the advance. With regard to the note and conditional sales contract, G.M.A.C. possesses no legal interest, but it has become only an agent for collection. In occupying this position G.M.A.C. may be entitled to compensation or collection costs, but this is generally true of an agent for collection and does not affect the status of the parties. The petitioner remained the legal owner of the note and conditional sales contract in the case at bar and consequently has an interest in the truck.

**224**

The following comment appears in 46 American Jurisprudence, Sec. 493, headed "Passing of Title":

"Contracts for sale on trial or approval are construed to mean that title shall continue in the seller until the sale has become absolute either by the buyer's approval of the goods or by his failure to comply with the express or implied conditions of the contract as to giving notice of dissatisfaction or as to returning the goods—title does not vest in the buyer under a sale on approval before he exercises his option to accept the goods merely because he paid the purchase price upon receiving the property. In the case of a sale and approval title remains in the seller even as against bona fide purchasers for value from the buyer."

It seems hardly necessary to say that the word "option" in the above quotation does not mean the vendee's right to have an offer submitted or remain open to him, but rather his right to accept or reject an offer which has been submitted to him without consideration extended for the same. It in no way implies that the advance of the purchase price is the consideration for a legal option not theretofore possessed by the vendee.

In view of the above, it is the opinion of the Court that the petitioner acquired an interest in the instant truck on April 8, 1957, and possessed such interest at the time of the present proceeding. Such interest was acquired after fully complying with the conditions precedent to the remission or mitigation of forfeiture.

It is, therefore, ordered, adjudged and decreed that the One 1957 Model Chevrolet one-half ton Pickup Truck, Serial Number V3A57B110126, be, and the same is hereby, condemned and forfeited to the United States of America for the cause propounded in the libel herein, and it is

Further ordered, adjudged and decreed that the United States Marshal for the Eastern District of North Carolina be authorized and empowered, and he is hereby directed, to sell said property at public auction, after due notice and advertisement as required by law, and that from the proceeds from said sale the said United States marshal shall pay all expenses of seizure, storage charges and all other fees in connection with the charges of said sale and the Court costs, not to include attorney's docket fees, and after payment of said charges, fees, expenses and Court costs, pay to Richlands Motor Sales, Inc., Richlands, North Carolina, the sum of $1,332.11, and after said sums are paid, pay any balance remaining thereof into the Treasury of the United States.